**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> 84 GEORGE LLC, <br><br> Debtor. | Case No. 10-44253-ESS <br><br> Chapter 11 <br><br> **Hearing Date: March 18, 2011 at 11:00 a.m.** |

**MOTION OF U.S. BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF COUNTRYWIDE COMMERCIAL MORTGAGE TRUST 2007-MF1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-MF1 TO DISMISS THE CASE PURSUANT TO 11 U.S.C. §1112**

TO:     HON. ELIZABETH S. STONG, U.S.B.J.
          UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF NEW YORK

U.S. Bank, N.A., as Trustee for the Registered Holders of Countrywide Commercial Mortgage Trust 2007-MF1, Commercial Mortgage Pass-Through Certificates, Series 2007-MF1 (the "Lender"), by and through its attorneys, McCarter & English, LLP, hereby moves the Court in this joint submission,[1] filed together with U.S. Bank, N.A., as Trustee, as successor-in-interest to Bank of America, N.A., as Trustee for the registered holders of J.P. Morgan Chase

---

[1] This pleading is also being filed in <u>In re South Side House LLC</u>, Case No. 09-43576, another single-asset real estate case pending before this Court. The South Side case is not administratively related to this case; however, the principals of the Debtor, Israel Perlmutter and Menachem Stark, are the same in each case; the first lien holder in each case is a Real Estate Mortgage Investment Conduit ("REMIC") specially serviced by CWCapital Asset Management LLC ("CWCAM"), for which Alex Guggenheim and Alex Killick of CWCAM have had regular involvement following the loan defaults; and the Debtor and the Lender are represented by the same counsel in each case. Due to similarities in the cases that relate to the merits of the Lender's Motion (<u>i.e.</u>, a pattern of delay by the Debtor and an inability to confirm a plan), the Lender is filing this joint submission. The loans in each case are held by separate REMIC Trusts for which U.S. Bank, N.A., is acting as Trustee. In this Motion, the term "Lender" is used to refer individually and collectively to the REMIC Trusts holding the loans, and the context indicates the intended use of the term. The collective reference to "Lender" is for convenience only; the holders of the subject loans are, and remain, distinct entities.

ME1 11141577v.2

Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11 (also referred to herein as the "Lender"), to dismiss the case pursuant to 11 U.S.C. §1112, and in support of this Motion states:

**PRELIMINARY STATEMENT**

1. Because a debtor, simply by filing a Chapter 11 petition, is able to frustrate its creditors from exercising rights and remedies to which they would otherwise be entitled, "vigilant supervision is required on the part of the Bankruptcy Court to avoid its abuse." In re Hi-Toc Development Corp., 159 B.R. 691, 693 (Bankr. S.D.N.Y. 1993). This Motion to Dismiss is being filed in this case ("84 George") and in another single-asset real estate case before this Court involving the same principals, Israel Perlmutter and Menachem Stark, entitled In re South Side House LLC, Case No. 09-43576 ("South Side"). The South Side and 84 George cases were commenced in April, 2009, and May, 2010, respectively, in each case following a ruling adverse to the Debtor in a pre-petition, Federal Court foreclosure action. The cases have languished due to the Debtors' inability and unwillingness to truly seek to proceed to a confirmation hearing, and the cases should be dismissed.

2. **Single asset real estate cases should not languish for months and years.** Congress has made it clear that single-asset real estate cases are to move promptly. The broader policy concerns that underlie the Bankruptcy Code (the reorganization of businesses and the protection of jobs), are generally not implicated in a single-asset case, in which the debtor often has few or no employees, and in which the "business" of the debtor (i.e., the collection of rents) will likely continue regardless of whether the debtor retains ownership of the property. Single-asset cases are essentially two-party disputes between the equity holders of the debtor and the secured lender for ownership of the property. To avoid prejudicial and costly delay to lenders

when reorganization is not realistic, Congress provided for "extraordinary expedition" of single-asset real estate cases. In re LDN Corp., 191 B.R. 320, 326 (Bankr. E.D.Va., 1996); see Collier On Bankruptcy, ¶ 362.07[5][b] (15th ed. rev. 2008) ("The purpose of section 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully.").

3. The Debtor has raised various factual and legal issues, while all the while avoiding one of the real issues is both cases. Neither proposed plan of reorganization can be confirmed without an infusion of money to satisfy the new value exception to the absolute priority rule. In the South Side and 84 George cases, the Disclosure Statements provide that the Debtor requires $600,000 and $80,000, respectively, to fund the plan. In each case, the Debtor has never demonstrated its ability to fund the plan. **At the hearing on this Motion, the Debtor should provide conclusive proof of the availability of funds, and the funds should be deposited in the trust account of Debtor's counsel.** Otherwise, the Debtor is just wasting the time of this Court and causing substantial expense and delay to the Lender. Costly and time-consuming litigation should not continue in each case without any proof that the principals of the Debtor possess the necessary funds to reorganize.

4. **The Debtors are intentionally delaying these cases.** The Debtors are single-asset real estate entities that have a limited ability to increase revenue, and there are only several possible means of even attempting to confirm a plan. In each case, the current Plan could have been filed on day one. Instead, the Debtors failed to file a plan within the exclusivity period and have charted a course aimed at maximizing the amount of delay and expense to the Lender. They propose a plan, receive objections from the Lender, propose another plan, receive

ME1 11141577v.2

objections from the Lender, propose another plan, etc. Indeed, nearly two years into the South Side case, the Debtor is now embarking on discovery with no apparent purpose other than to delay a hearing on confirmation, which is at this point only has a holding date of May 2, 2011. It is thus obvious that, having escaped the District Court foreclosure proceedings, the Debtor feels comfortable in this forum, where it has been able to continually adjourn substantive hearings, miss deadlines, and rely on the courtesies of the Court and the heavy workload of the Court to delay the case.

5. The amount of money being spent by the Lender and by the Debtor, and the amount of judicial resources expended, are significant when the Debtor will not proceed to confirmation. The Lender has incurred at least $250,000 in post-petition fees in the South Side case, and at least $45,000 in post-petition fees in the 84 George case. The amount of attorneys' fees incurred by the Debtors' counsel is unknown, and presumably is significant.[2] The fees and expenses are a direct result of the repeated delays by the Debtors and the Debtors' failure to proceed to confirmation.

6. These cases cannot languish further while the Debtors are unprepared to proceed to confirmation. The 84 George case is approaching the one-year anniversary; the South Side case is approaching the two-year anniversary. As in <u>In re Hi-Toc Development Corp.</u>, these are cases in which the Bankruptcy Court has the "discretion to conclude that enough [is] enough, that there [is] no realistic prospect for reorganization . . . and that continuation of the debtor's role as debtor-in-possession would abuse Chapter 11 while serving little useful purpose." 159

---

[2] In the South Side case, the attorneys' fees through the first six months of the case were approximately $170,000. <u>See</u> First Interim Fee Application (Docket No. 94), ¶6. At the hearing on this Motion, the Debtors should disclose to the Court and to the Lender the amount of fees that have been incurred by the Debtors and the balance due after crediting any payments that have been made.

4

B.R. at 693.

## FACTUAL AND PROCEDURAL HISTORY OF THE SOUTH SIDE CASE

7.      The Lender in the South Side case holds a Note in the original principal amount of $29,000,000 and a Mortgage and Assignment of Rents for the Debtor's real property.  See Claims Register, Claim No. 2,  Attachment to Proof of Claim, ¶¶ 4-6, Exhibits A-B.  The real property consists of a 74-unit apartment building and two adjacent commercial spaces located at 98-116 South Fourth Street, Brooklyn, New York.  See Affidavit Pursuant to Local Rule 1007 (Docket No. 7), ¶¶3-4.

8.      The Lender commenced a pre-petition, Federal Court foreclosure action against the Debtor (see Declaration of Peter M. Knob in Support of Objection of Bank of America, as Trustee, to Debtor's Motion to Use Cash Collateral (Docket No. 18), ¶2, Exhibit A) based on, among other things, the Debtor's diversion of approximately $800,000 in rental revenue.  The Lender obtained summary judgment against the Debtor on April 24, 2009.  Id. at ¶3, Exhibit B.

9.      The Debtor filed a petition for relief on April 30, 2009.

10.     The Lender filed a Proof of Claim in the amount of $36,833,639.68 (Claims Register, Claim No. 1).

11.     The Lender filed a Motion for relief from the automatic stay on July 24, 2009 (Docket No. 58, the "Relief from Stay Motion"), in which it asserted that the Debtor would be unable to confirm a plan.  There has never been a plenary hearing on the Motion, and the very purposes of 11 U.S.C 362(e) have been thwarted.

12.     The Debtor has filed multiple plans with the Court (Docket Nos. 91, 110, and 133), but the Debtor is still not prepared to proceed with confirmation.  Nearly two years into the case, the Debtor now wishes to take additional oral and written discovery from the Lender before

5

ME1 11141577v.2

proceeding to confirmation, and it is unknown when the Debtor believes it might be prepared for confirmation.

13. A hearing on confirmation has been tentatively scheduled for May 2, 2011.

**FACTUAL AND PROCEDURAL HISTORY OF THE 84 GEORGE CASE**

14. The Lender in the 84 George Case holds a Note in the original principal amount of $750,000 and a Mortgage and Assignment of Rents. See 84 George Claims Register, Claim No. 2, Attachment to Proof of Claim, ¶¶ 5-7, Exhibits B-K. The Debtor's real property consists of a six-unit apartment building located at 84 George Street, Brooklyn, New York. Local Rule 1007 Affidavit (Docket No. 25), Exhibit B.

15. The Lender commenced a pre-petition, Federal Court foreclosure action against the Debtor based on payment defaults, and a foreclosure sale was scheduled for May 11, 2010. Certification of Peter M. Knob in Support of Objection of U.S. Bank, N.A., as Trustee, to the Debtor's Motion to Estimate Secured Lender's Claim and Grant Further Related Relief (Docket No. 65), ¶3, Exhibit A, and ¶4, Exhibit B.

16. The Debtor filed a petition for relief on May 10, 2010.

17. The Lender filed a Proof of Claim in the amount of $841,224.05 (Claims Register, Claim No. 2).

18. The Debtor has filed multiple plans with the Court (Docket Nos. 45, 55, and 68), but the Debtor is not prepared to proceed with confirmation.

19. No firm date for a hearing on confirmation has been scheduled. On February 24, 2011, 84 George submitted a Notice of Settlement of Proposed Order to approve the Disclosure Statement (Docket No. 77).

20. The Lender now files this Motion to dismiss the South Side and 84 George cases.

# **LEGAL ARGUMENT**

21. This Court is very familiar with the legal standards that govern this Motion, and with the factual record in each case. Pre-petition, the Debtor diverted rents in the South Side matter, and in both cases were determined by the District Court to be in default of their mortgage obligations. Post-petition the Debtor wishes to utilize the Bankruptcy Code to attempt to challenge many of its obligations under the loan documents, such as pre-petition default interest. It wishes to improperly gerrymander classes of creditors under various versions of plans of reorganization. **But it has never appeared in Court with its witnesses at a confirmation hearing and stated that it has the ballots, it has the funds called for by the plan and it is ready to proceed to confirmation.** The Lender has consistently indicated its belief that the plans are not confirmable, and has consistently sought to have the plans substantively considered for confirmation so that the factual and legal defects in the plans are determined by the Court. Significant expenses, time and judicial resources have been incurred in single asset real estate cases where the Debtor has merely sought to delay.

I. **THE CASES SHOULD BE DISMISSED UNDER 11 U.S.C. §1112 BECAUSE THE DEBTORS' ACTIONS DEMONSTRATE THAT THEY ARE UNABLE TO CONFIRM A PLAN**

   A. **There Is "Cause" For Dismissal Under §1112 Of The Bankruptcy Code When Reorganization Is Not Realistic, Which May Be Shown By the Debtor's Inability To Seek To Confirm A Plan**

22. Under 11 U.S.C. §1112, the Court <u>shall</u> dismiss or convert a case under Chapter 11 if, after notice and hearing, and absent unusual circumstances, the moving party establishes "cause." Section 1112 sets forth a list of grounds constituting "cause," including, among others, "substantial or continuing loss to or diminution of the estate and the absence of a

reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b). The list set forth in §1112 "is not exhaustive and courts are free to consider other factors."[3] In re Frgr Managing Member LLC, 419 B.R. 576 (Bankr. S.D.N.Y. 2009) (internal quotations omitted); accord In re C-TC 9th Avenue Partnership, 113 F.3d 1304 (2d Cir. 1997) ("The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." Id. at n.5 (quoting House Report No. 95-595, 95th Cong., 1st Sess. at 405-6)). For example, although "bad faith" is not listed under §1112, case law is clear that a Chapter 11 case may be dismissed when it was filed in bad faith. See, e.g., In re Loco Realty Corp., No. 09-11785 (ALG), 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. June 25, 2009). "The decision as to whether to dismiss or convert is within the discretion of the court." In re Hampton Hotel Investors, L.P., 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001).

23. Dismissal under §1112(b) is warranted in a single-asset real estate case when it is apparent that the Debtor is simply using the bankruptcy case to thwart its secured creditor, and it has no real prospect of reorganization. See In re Northtown Realty Co., LP, 215 B.R. 906 (Bankr. E.D.N.Y. 1998) ("the court of appeals['] view [is] that in single asset real estate cases,

---

[3] Notwithstanding certain amendments to §1112 under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the Court still has wide discretion to consider factors not listed under §1112(b) in deciding whether to dismiss the case. See, generally, Collier on Bankruptcy, ¶ 1112.01 ("The court does have discretion to determine whether dismissal, conversion to chapter 7 or appointment of a trustee or examiner is in the best interest of creditors and the estate. The court also has discretion in determining what additional facts not enumerated in section 1112(b)(4) constitute cause."); see also In re Starmark Clinics, LP, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) ("After the 2005 amendments, the court continues to consider cause for dismissal of a Chapter 11 case based on the totality of the circumstances in the case. It remains the case that a debtor's attempt to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute strongly supports a finding of cause for dismissal."); see also In re TCR of Denver, LLC, 338 B.R. 494, 500 (Bankr. D. Colo. 2006) ("It is clear that Congress amended section 1112(b) to make it broader, more strict as to debtors, and more encompassing.").

debtors cannot manipulate the Bankruptcy Code to thwart the legitimate rights of secured creditors to realize on their claim").  Whether the issue of "cause" is analyzed under the enumerated factors of §1112(b) or under the related "good faith" doctrine[4], dismissal is warranted when a debtor simply cannot confirm a plan:

> Section 1112(b) and its associated 'good faith' doctrine are primarily concerned with the underlying question whether reorganization is the proper course of action in a particular debtor's case. . . . It is . . . clear that once rehabilitation becomes unrealistic, the debtor should not be permitted to remain under chapter 11.

In re Loco Realty Corp., 2009 Bankr. LEXIS 1724, *7 (Bankr. S.D.N.Y. June 25, 2009) (internal quotations omitted); see In re 68 West 127 Street, LLC, 285 B.R. 838 (Bankr. S.D.N.Y. 2002) (a debtor may not "improperly hid[e] behind the automatic stay to speculate with the creditor's collateral, because it is not able, or not trying, to confirm a chapter 11 plan"); see, generally, Collier Bankruptcy Practice Guide, ¶37.30 ("Even after the 2005 amendments, the major portion of the grounds specified in . . . section [1112(b)] still concern the failure of the debtor to propose an effective plan, or to carry out a confirmed plan.  In addition, delay by the debtor that prejudices creditors may warrant dismissal . . . when the prospects for formulating a successful plan for rehabilitation are not reasonably likely.").

24.     In re Hi-Toc Development Corp., 159 B.R. 691, illustrates that "cause" exists

---

[4] In re C-TC 9th Avenue Partnership, 113 F.3d 1304 (2d Cir. 1997) provides the following factors for the Courts to consider in deciding whether a case was filed in "bad faith":  (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.  A number of these factors are present here, and there is ample evidence for a finding of "bad faith."

under §1112(b) when a debtor's actions demonstrate it has no real prospects for reorganization. That case involved a single-asset debtor whose real property was worth less than the amount due under the mortgage. After less than six months in the bankruptcy case, the Bankruptcy Court converted the case to a Chapter 7 case because the debtor failed to pay real estate taxes and quarterly fees, file required operating reports, or present a plan of reorganization. "Under these circumstances the Bankruptcy Court had discretion to conclude that enough was enough, that there was no realistic prospect for reorganization or for payments to unsecured creditors; and that continuation of the debtor's role as debtor-in-possession would abuse Chapter 11 while serving little useful purpose." Id. at 693. Thus, in a single-asset real estate case, a Court has wide discretion to decide, based on the lack of progress, that "cause" exists under §1112.

25. In these matters the real property has a value less than the mortgage indebtedness. Payments are being made to the Lender only because the Debtor cannot divert the rental revenue as was done pre-petition. The Debtor has escaped the District Court foreclosure proceedings, and is content to sit in this Court avoiding a hearing on confirmation.

> **B. The Debtors Are Unable To Confirm A Plan As Shown By Their Inability To Proceed To A "Real" Hearing On Confirmation, And Thus There Is "Cause" For Dismissal Under §1112 Of The Bankruptcy Code**

26. In each case, "cause" exists under §1112 because the Debtors have no real prospects of reorganization, as shown by the Debtors' repeated delays and inability to proceed to a "real" confirmation hearing. The 84 George and South Side cases are approaching the one and two year-anniversaries, respectively, and yet the Debtor in each case is still not prepared to proceed to confirmation and has never exhibited the funds needed to fund its Plan.

27. In both cases, the Court has before it apartment buildings with high percentages of occupancy. The monthly revenue and expenses has been fairly consistent within ranges, and

10

there has been no post-petition economic changes which increase the likelihood of the ability to confirm a plan. These are not construction loans, or a situation where a debtor has low revenue at the beginning of the case and needs to increase revenue to confirm.

28. In the 84 George case, the Debtor did not file a plan until more than five months into the case. Several more months then passed. The original Plan sought to "cure" the loan defaults under §1124 of the Bankruptcy Code despite the entry of a pre-petition federal court final judgment for foreclosure. At a hearing in January, 2011, the Lender requested that the Court schedule a firm confirmation hearing, at which point the Debtor would have to exhibit funds to show that it could effect a "cure." In response, the Debtor advised the Court it would amend the Plan. The Debtor is now proposing a "cram-down" under 11 U.S.C. §1129(b). Under the circumstances, in which the Debtor has a fixed number of rental units from which to generate income, there is no compelling reason why the current Plan could not have been proposed on the first day of this case. There is no apparent explanation, other than to delay, for the Debtor to have proposed a "cure" Plan, to abandon it as confirmation approached and after the Lender expended time and expenses to object to the Plan, and then to amend the Plan at this late stage to provide for a "cram-down." The Debtor is simply stalling the case because it does not wish to proceed to confirmation.

29. In the South Side case, the Debtor took more than six months to file its Plan. See Docket No. 97. More than 15 months have passed since then, and still the Debtor is not prepared to proceed to confirmation. The Debtor caused extensive delays by, among other things, failing to seek an appraisal and then, when it was ordered to obtain an appraisal, obtaining multiple extensions of the deadline. See Docket Nos. 81, 96, 105. The Debtor is presently seeking discovery from the Lender (Docket No. 211), and a hearing on confirmation is scheduled for

May 2, 2011 for purposes of calendar control. As in the 84 George case, the Debtor has never exhibited the funds needed for confirmation and does not wish to proceed to confirmation.

30. In short, each case has proceeded for a significant period of time without any apparent ability by the Debtor to confirm its Plan. In each case, the Debtor has not demonstrated the funds needed to confirm its Plan. The Disclosure Statement in the South Side case provides that the Debtor requires $600,000 to confirm the Plan (Docket No. 132, p. 14, ¶45), and the Disclosure Statement in the 84 George case provides that the Debtor requires $80,000 to confirm the Plan (Docket No. 69, p. 11, ¶30). Even if the amount of funds to be infused are different than as stated in the preceding sentence, the principals of the Debtor should escrow the funds now. The cases should not continue when the Debtor has failed to show that it possesses these funds.

31. There is extensive history before the Court showing that the Debtor is eluding a "real" confirmation hearing. These are not cases in which the Lender is asking the Court to decide at the outset of the case and with limited information whether the Debtor has a real prospect of reorganization. The 84 George and South Side cases are approaching the one and two year anniversaries, respectively. The Debtor has had adequate time to put forward a confirmable plan and to exhibit the funds necessary for confirmation. Its actions (and inactions) speak louder than words.

32. The Lender is being prejudiced by the delay. In the 84 George case, the post-petition attorneys' fees and costs of the Lender exceed $45,000. In the South Side case, the post-petition attorneys' fees and costs of the Lender exceed $250,000. More than a year ago, the Debtor's fees in the South Side case exceeded $170,000. <u>See</u> First Interim Fee Application (Docket No. 94), ¶6. The current amount of attorneys fees' and costs incurred by the Debtors is unknown to the Lender, and the Lender requests that the Debtors disclose the amount at the

hearing on this Motion. The cost and burden associated with a lengthy Chapter 11 proceeding is precisely what Congress intended to prevent by requiring single-asset cases to proceed on an expedited basis. See In re LDN Corp., 191 B.R. 320 (Bankr. E.D.Va., 1996) ("Congress was apparently concerned about the delay in the bankruptcy process and the resulting unfairness to secured lenders when single asset real estate projects were involved. . . . In enacting the amendments relative to single asset real estate cases, Congress has provided for extraordinary expedition."); see also In re Union Meeting Partners, 178 B.R. 664, 681 (Bankr. E.D. Pa., 1995) ("Given the small benefit to be gained from many . . . single asset cases, it is hard to justify the costs of dollars and time which mount when these cases drag on.").

33. Furthermore, in the South Side case, and presumably in the 84 George matter, the Debtor is arguing that the post-petition monthly payments in the amount of approximately $150,000 are to be applied to the Lender's pre-petition Claim. Thus, under the Debtor's reasoning, the Lender's pre-petition Claim is reduced by more than $1,500,000 each year that the case remains in bankruptcy. At a hearing in April, 2010, the Lender argued that, under the Debtor's position, the Lender is being economically prejudiced by the Debtor's delay in proceeding to confirmation. Yet still, nearly a year later, the Debtor still is not prepared to proceed to confirmation. As such, "cause" exists under §1112(b) for conversion or dismissal.

C. **The Debtors Are Unable To Confirm A Plan Because, Among Other Things, The Rental Income Belongs to the Lender**

34. In addition to the Debtors' failure to show that they possess the funds needed for confirmation, the Debtors have failed to show that they may use the rents to reorganize. In each case, the Lender has asserted that, by virtue of an absolute assignment of rents, the rental income from the real property belongs to the Lender and may not be used by the Debtor to fund a plan. See, in the South Side case, Relief From Stay Motion, ¶¶27-30 (Docket No. 58); in the 84

13

George case, Objection of U.S. Bank, N.A., as Trustee, to the Debtor's Chapter 11 Plan of Reorganization (Docket No. 66), ¶¶56-60.

35. Briefly, and as set forth more fully in the foregoing pleadings, the Debtors have, at most, "a residual interest in the rents assigned" (In re Constable Plaza Associates, L.P., 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991)), and "the cash flow from the rents . . . [are] not property of the estate and cannot be used by the Debtor to fund [a] plan." In re Loco Realty Corp., 2009 Bankr. LEXIS 1724, p. 10 (Bankr. S.D.N.Y. June 25, 2009). In each case, the Debtor does not dispute that the loan documents were executed by the Debtor and that the loan documents state that the rents were absolutely assigned to the Lender. In each case, the Debtor offers no legitimate reason why it should be allowed to escape the plain terms of its contract with the lender, under which the rents were absolutely assigned to the Lender. Thus, the rents may not be used to fund a plan and the cases should be dismissed.

**D.  Dismissal Is The Appropriate Remedy Under The Facts Of These Cases**

36. Dismissal of the cases, as opposed to conversion to Chapter 7, is warranted. In each case, the Lender's entitlement to foreclosure has already been established by the District Court Judge: in the 84 George foreclosure action, a Foreclosure Judgment was entered; in the South Side foreclosure action, summary judgment was entered. All that remains to be done in the South Side action is the computation of amounts due and a sale of the real property, and all that remains to be done in the 84 George action is a sale of the real property. In each case, the Debtor's only asset is the real property. There is no need for the appointment of a Chapter 7 Trustee to gather assets and recover property of the Estate. The appointment of a Chapter 7 Trustee would simply increase unnecessarily the costs of selling the Debtor's real property. To the extent necessary, a receiver can be appointed by the District Court Judge to manage the

property and collect the rents.   As such, dismissal is warranted.

   37.  WHEREFORE, the Lender respectfully requests that the South Side and 84 George cases be dismissed.

| | |
|---|---|
| Dated: February 24, 2011 | McCARTER & ENGLISH, LLP<br>Attorneys for U.S. Bank, N.A., as Trustee for the Registered Holders of Countrywide Commercial Mortgage Trust 2007-MF1, Commercial Mortgage Pass-Through Certificates, Series 2007-MF1 and for U.S. Bank, N.A., as Trustee, as successor-in-interest to Bank of America, N.A., as Trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11 |
| | By: /s Joseph Lubertazzi, Jr.<br>   Joseph Lubertazzi, Jr.<br>   A Member of the Firm<br>   245 Park Avenue, 27th Floor<br>   New York, NY 10167<br>   Phone: (212) 609-6800<br>   Fax: (212) 609-6921<br><br>   -and-<br><br>   Four Gateway Center<br>   100 Mulberry Street<br>   Newark, NJ 07102<br>   Phone: (973) 622-4444<br>   Fax: (973) 624-7070 |